# N. Y. SUPERIOR COURT.

## GEORGE W. HOLTSINGER agt. THE NATIONAL CORN EXCHANGE BANK.

*General words* in a *power of attorney*, cannot be construed to extend or enlarge the power beyond the subject matter of the agency, as expressed in the previous parts of the instrument.

Where the power is " to ask, demand, receive and receipt for any and all pay and allowances due me from the Government of the United States, on account of my services (in the army) &c., and to sign my name to any receipt, pay roll, voucher or other acquittance of such dues; * * * with full power to execute and deliver all needful instruments and papers, and to perform all and every act and thing whatsoever requisite and necessary to be done in, and about the premises," with the usual ratifying and confirming clause, it does not authorize the attorney to *indorse drafts* payable to his principal or order, upon the assistant treasurer of the United States.*

The defendant, the bank, being without legal title to the drafts by means of void indorsements, acquired no title to the money received upon them, therefore, no objection can be interposed to the maintenance of an action by the payee for its recovery.

*General Term, January,* 1869.

THIS action was brought to recover the amount of two drafts, one for five hundred and twenty-five dollars and ten cents, and the other for nine hundred and thirty dollars and fifty-nine cents. They were in the same form. The following is the copy of one:

" No. 549. WASHINGTON, D. C., Sept. 21, 1866.
" *Assistant Treasurer of the U. S., New York:*

" Pay to George W. Holtsinger, or order, five hundred and twenty-five dollars and ten cents ($525.10).

" Paid, Oct. 2, 1866.

J. W. NICHOLLS,
" *Add. P. M. U. S. A.*"

---

*NOTE.—The decision in this case, seems to be strongly fortified by English and American authorities, but as an original question, we do not see how it could be sustained, if the view we take of the facts and the law in reference to it are correct.

The defendant received these drafts from one Charles H. Green, a depositor in the bank, indorsed as follows :

" Pay to the order of R. Green, Jr.;

" George W. Holtsinger ;

" R. Green, Jr. ;

" Charles H. Green ; "

and collected the amounts from the assistant treasurer of the United States, upon whom they were drawn. It was admitted that the plaintiff had not indorsed the drafts, and that the indorsement of his name thereon was in the handwriting of one Richard Green, Jr., now deceased, whose only authority to indorse the plaintiff's name thereon, was contained in a power of attorney, which is as follows :

" Know all men by these presents : That I, George W. Holtsinger, late first lieutenant, and afterwards captain, of company F., of the fourth regiment of Tennessee infantry (volunteers), do hereby constitute and appoint Green & White, of Nashville, Tennessee, to be my true and lawful and sufficient attorneys, for me, and in my place, name and stead to ask, demand, receive, and receipt for any and all pay and allowances due me from the government of the United States, on account of my services as first lieutenant and captain of company F, of the fourth regiment of Tennessee infantry (volunteers), aforesaid, to sign my name to any receipt, payroll, voucher, or other acquittance of such dues; and for the purpose aforesaid, I do hereby grant unto my said attorneys full power to execute and deliver all needful instruments and papers, and to perform all and every act

---

Here is a draft drawn on the assistant treasurer of the United States, by a paymaster of the U. S. army in favor of the plaintiff, who executed the power of attorney; and in the absence of any proof to the contrary the legal presumption must be that it was for *dues* to the plaintiff from the government of the U. S., the very subject matter which induced him to execute a power of attorney for their collection.

The attorney having received this draft for his principal, how is he to ask, demand and receive the money on it? The draft being evidence of the amount due, and authority for its collection, the attorney, instead of going personally to the assistant treasurer and presenting his power of attorney, and indorsing the name of his

and thing whatsoever requisite and necessary to be done in and about the premises, as fully and completely to all intents and purposes as I might or could do if personally present, hereby ratifying and confirming all the acts of my said attorneys, or either of them, done by virtue and in pursuance of these presents.

"In testimony whereof, I have hereunto set my hand and seal, on this fifteenth day of August, A. D., one thousand eight hundred and sixty-six, at Greenville, Tennessee.

GEORGE W. HOLTSINGER,

"Late 1st Lieut. and Capt. Comp. F., 4th Regt. Tenn. Infantry, (Vols.).

"Witnessed by "Robert M. McKee, "William D. Culver."

It was also admitted that Richard Green, Jr., was one of the firm of · Green & White, mentioned in the foregoing power of attorney.

It was proved that the amount of the drafts, when collected by the defendant, were carried to the credit of Charles H. Green, from whom the drafts had been received for collection.

It did not appear whether the defendant had, or had not, paid the amount to their depositor.

The action was tried by a referee, who, after finding the facts, decided that the power of attorney was void, under section 1 of the act of congress of the 26th of February, 1853, and that the indorsement of the plaintiff's name was without authority, and ineffectual to transfer the drafts to Charles H. Green or to the defendant.

---

principal upon the draft, and receiving the money on it, as he most assuredly would, in such case, indorses the draft and has it negotiated through a bank—the customary mode of doing such business.

Now the question arises, has the attorney the power to *indorse* this draft, and receive the money on it by virtue of his power of attorney? It would seem that this act of the attorney comes within the very *terms* of the power which authorizes him to *ask, demand, receive and receipt,*for any and all pay and allowances due his principal from the government of the United States, with full power to *sign the name of his principal to any receipt, payroll voucher or other acquittance* of such dues; with full power to execute and deliver *all needful instruments and papers,* &c. If the attorney

From a judgment in favor of the plaintiff, for the amount of the drafts and interest, the defendant appealed.

CHAS. P. CROSBY, *for appellant, defendant.*
O. L. STEWART, *for respondent, plaintiff.*

*By the court,* MONELL, J. Without examining the ground upon which the referee has placed his decision, namely, that the power of attorney to Green and White was void, under the first section of the act of congress of February 26, 1853, and therefore the defendant acquired no title to the drafts, I am so well satisfied there is another ground so fatal to the defense, that, without inquiring into the correctness of the reason given by the referee, we must affirm his decision, upon the well established rule that the court will not reverse a correct judgment, merely because an insufficient or incorrect reason may have been assigned for it.

The only claim of title to the drafts asserted by the defendant was derived through the indorsement of the payee's name by R. Green, Jr., under a power of attorney to Green and White.

It was admitted on the trial, by the defendant, that the indorsement of the plaintiff's name on the drafts was not in the handwriting of the plaintiff, but was in the handwriting of Richard Green, Jr.; and that the only authority he had to indorse the name of the plaintiff was contained in the power of attorney.

This admission must be deemed to conclude the defendant upon the facts of the case.

---

has authority to ask, demand and receive all pay and allowances due his principal from the government, it is not dicovered how he can ask, demand and receive the money on this draft,which is payable to his principal, otherwise than by an indorsement thereof of the name of his principal. The power of attorney might be of little service to the principal, if this power of indorsement was not given, as undoubtedly a large share of these government dues are made payable by negotiable paper, upon which indorsements are necessary; and which indorsements are to all intents and purposes a receipt or voucher for the money.  REP.

Upon those facts an objection might be taken that a power exercised by one only of two joint attorneys, was not sufficient to pass title to the drafts to the defendant.

The general rule is, that where an authority is given to two or more persons to do an act, the act is valid to bind the principal only when all of them concur in doing it (*Story on Agency*, § 42, *and cases cited.*) In respect to real property, it is made the subject of a public statute (1 *R. S.*, 735, § 112); and in respect to other things it is a well understood principle of the common law. In the case of *Green* agt. *Miller*, (6 *John. R.*, 39), it was held that, in a parol submission to *five* arbitrators, all must join in the award. It is there said, that in a delegation of power for a mere *private* purpose, it is necessary for all to concur. In matter of public concern a different rule prevails. That decision was before the statute (2 *R. S.*, 542, § 7), which somewhat changed the common-law rule (*Paley on Agency* [*Lloyd*], 177, *and cases cited*). In this case, however, the letter of attorney was to two persons in their copartnership name, and it may be that the signature of one of the partners of his own name, and not of the name of his firm, was a sufficient execution of the power. But as the court do not fully concur on that point, and as it is not necessary to the decision, it is left undecided.

The important question is, did the power of attorney give any authority to the attorneys to indorse the drafts?

The express power is, "to ask, demand, receive, and receipt for any and all pay and allowances due me from the Government of the United States, on account, &c., and to sign my name to any receipt, payroll, voucher, or other acquittance of such dues; * * * with full power to execute and deliver all needful instruments and papers, and to perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises," with the usual clause ratifying and confirming the acts of the attorneys.

It will be seen that the letter of attorney does not in express terms grant any power to indorse the plaintiff's name upon any draft; and unless such power can be derived from those parts of the instrument which confer what may be called general power, it nowhere exists.

The case of *Hogg* agt. *Smith*, (1 *Taunt.*, 347) was very similar to this case. The plaintiff, by power of attorney, constituted one English, his attorney, to "ask, demand, recover and receive, from the commissioners of his majesty's navy, all such salary, wages, &c., as there was or thereafter should be due to him, for his services in any of his majesty's ships, * * and acquittances, releases and other discharges" in his name to make, with the usual clause of general ratification and of general power in the premises. English received from the commissioners of his majasty's navy, on account of the plaintiff, two bills, payable to the plaintiff's order. English indorsed the drafts in the plaintiff's name, and negotiated them to the defendant. The action was *trover*, and it was held that the authority was strictly confined to receiving the debt; that the attorney, by receiving the bills, performed all that he was authorized to do, and ought to have kept them in his possession for the plaintiff.

The case of *Hay* agt. *Goldsmidt*, (*cited by* LAWRENCE, J., in *Hogg* agt. *Smith, supra*) was also similar. There was a power of attorney to ask, demand, and receive from the East India company all moneys that might be due, &c., and *to transact all business*, with the usual general power and clause of ratification. The attorney received an India bill payable to the plaintiff's order, indorsed it in his name, procured it to be discounted by the defendants, who received of the India company the money due on the bill. The action was to recover the money, and the court was of opinion that the instrument gave no authority to the attorney to indorse the bill, and that the words "all business"

must be confined to all business necessary for the receipt of the money.

In *Gardner* agt. *Baillie*, (6 *T. R.*, 591), the attorney had accepted a bill for and in the name of the defendant as executrix, for a debt due to the plaintiff from the defendant's testator. The letter of attorney authorized her attorney to " adjust and settle all accounts, differences," &c., wherein she, as executrix, was interested; and for her and in her name, as executrix, to execute assignments of mortgages, receipts releases, &c.; *to pay all debts* due from her as executrix, and " *generally to do all such further acts* for recovering debts and discharging the power given by the letter." It was held that there was no authority to accept the bill. In *Rossiter* agt. *Rossiter*, (8 *Wend.*, 494), a promissory note was made by an attorney, in the name of his principal, to release certain pledged property. The letter after giving special power to the attorney also empowered him "to accomplish at his discretion, a complete adjustment of all the concerns of Pynchon, and to do any and every act in his name which he could do in person." The court held that the attorney was a special agent; that the letter specified what business he was to transact, and that the general authority " to accomplish, at his discretion," &c., conferred no power that did not relate to the business previously mentioned. The cases of *Hogg* agt. *Smith*, and *Hay* agt. *Goldsmidt*, were cited and approved.

The general rule for the interpretation of this species of written instruments is, that language, however general in its form, when used in connection with a particular subject matter, will be presumed to be used in subordination to such matter, and will be limited accordingly. Such instruments are always subjected to a strict interpretation, and will not be extended beyond that which is given in terms, or which is necessary and proper for carrying the authority so given into effect (*Ferreira* agt. *Depew*, 17 *How. Pr. R.*, 418).

The cases I have cited are sufficient to show that the general words in a letter of attorney cannot be construed to extend or enlarge the power beyond the subject matter of the agency, as expressed in the previous parts of the letter.

There being therefore no express authority to indorse the drafts, none can be implied from other parts of the letter.

The defendant being without legal title to the drafts, acquired no title to the money received upon them, and I can see no objection to the maintenance of an action by the payee for its recovery.

In *Hogg* agt. *Smith*, (*supra*) the action was *trover*, to recover for the conversion of the bills; and in *Hay* agt. *Goldsmidt* (*supra*), for the recovery of the amount of money received on the bill. In each case the action was against a person to whom the bills had been transferred for value.

In this case, the defendant was the collecting agent of its depositor, had parted with no value, and was, in fact, the mere custodian of the money, having no interest whatever, which under other circumstances, it might, perhaps, ask to have protection.

But, if the English cases were not sufficient to sustain this judgment, one or two in our own courts can be brought to their aid.

In the case of *Canal Bank* agt. *Bank of Albany* (1 *Hill.*, 287), a draft drawn upon the plaintiff was sent to the defendant for collection, with the payee's name *forged.* and they received the money. It was held that the defendant was bound to refund to the drawees who had paid the draft.

A similar case is *Coggill* agt. *American Exchange Bank*, (1 *N. Y. R.*, 113), where the payment by the drawees was also after a forged indorsement, and the amount was recovered. And see *Goddard* agt. *Merchants' Bank*, (4 *N. Y. R.*, 147).

In each of these cases the defendant was the collecting agent, and received the money on account of its immediate correspondent and indorser; and they are cited to show that the mere agency of the defendant in the matter, did not protect them from an action for money which they had received without legal authority from the payee of the drafts.

The principle decided in *Easton* agt. *Clark*, (35 *N. Y. R.*, 225), is, I think, also applicable to this case. It is, that property disposed of by a factor, in a manner not within the scope of his authority, may be reclaimed by the owner, on the ground that no title passes, either in *replevin* or *trover*, or he may waive the *tort* and recover the proceeds of the sale.

It not appearing in this case that the defendant has paid over to its depositor the money received on the drafts, it must be assumed that it remains in their hands, and therefore it is a matter of indifference to them which party receives it.

I have reached the conclusion in this case, that the defense is unsound with some reluctance, inasmuch as the points I have considered were not much discussed on the argument; but the reasons I have stated are founded wholly on *facts* which cannot be changed; and the most that can be complained of, is, that the appellants have not had another opportunity to argue them.

I am of opinion that the judgment should be affirmed.

FITHIAN, J. The cause of action in this case is, that defendant having innocently, but without authority or assent of the owner, become possessed of plaintiff's property (the drafts in suit); and having, through the unauthorized use of plaintiff's name, converted the same into money, which it refused to pay to plaintiff, the law gives the latter a right of action as for money had and received to his use. I think the action is clearly maintainable in such a case.

I concur in the opinion of the court affirming the judg-
ment in this case, on the ground solely that the power of
attorney is not sufficiently broad and comprehensive to au-
thorize the attorney to sign or indorse plaintiff's name to
any bill, draft or note. The attorney was a special agent
for one single purpose, and when he had received and re-
ceipted for the drafts or "warrants" specified, he had exe-
cuted his power, and his authority as agent *terminated.* He
held the drafts precisely as he would have held money if he
had received that instead of the bills from the United States
officer, viz., as the property of plaintiff, with no power
or right of disposition whatever, save to pay over to
plaintiff.

On the question whether in this case the power of at-
torney could be legally executed by one of the two join
attorneys, *alone,* I express no opinion.

The grounds upon which we put our decision in this
case renders it unecessary to inquire whether the power
of attorney was void by reason of its not being executed
within the time required by the act of Congress of February
26, 1853.

However, as the referee based his decision solely upon
that ground, and the question was much discussed on the
argument, it may not be inappropriate to state briefly my
conclusions on that subject. I am of opinion that the
provisions of the statute above mentioned are not intended
to apply to *all* powers of attorney, but only to such as are
irrrevocable and work an assignment to the attorney of an
interest in the claim or its proceeds ; or in other words,
powers coupled with an interest—for it is such only that
are within the mischief sought to be remedied (6 *Opinions
Attorney-General, p.* 50) ; and that a simple power or au-
thority to an agent to collect and receive money on a demand
against the government, in which the agent has no interest
whatever, is not within the provisions of the first section of
the act of 1853, provided it be executed in accordance with

Holtsinger agt. National Corn Exchange Bank.

the requirements of the act of 1846 on that subject. I am also of opinion that as to such powers as are void within the provisions of the act of 1853, they are so only as between the claimant and the government; that is, the officers of the government are authorized to disregard the power and treat it as a void instrument. If, however, the officers of the United States choose to so far recognize the power as to pay over to the agent money or property on account of the claim, the claimant has his election to repudiate the act as no lawful payment, and still assert his claim—or he may ratify the act of payment, and pursue his money or property into the hands of his agent, or other persons to whom the agent may have delivered the same. If he does the latter, he is subject to, and bound by all and every power of disposition or interference with the fund which he may have given, and which is valid at common-law. The United States statute was not intended to affirm or avoid contracts between citizens, except so far as it affects the relations of the *government* with its citizens. Had the power of attorney in this case been sufficient at common-law to authorize the agent to *indorse bills*, the judgment must have been reversed. As it is, judgment is affirmed.

JONES, J., concurred.